UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

United States of America,
        Plaintiff,

v.                         NO. 3:99CV1772(EBB)

One Parcel of Property
Located at 895 Lake Avenue
Greenwich, Connecticut, With
All Appurtenances and
Improvements Thereon,
        Defendant.

## RULING ON CLAIMANT CHERYL LACOFF'S MOTION FOR PROTECTIVE ORDER

Before the Court is Claimant Cheryl Lacoff's ("Lacoff") motion for a protective order [Doc. No. 107]. Lacoff seeks to protect from disclosure a two-page document entitled "Affidavit of Duress," claiming it is protected by attorney-client privilege and the work product doctrine. For the reasons set forth below, the relief Lacoff has requested is DENIED.

Background

The Receivers-Claimants and the Government served requests for production of documents on Lacoff on March 2, 2005 and April 19, 2005, respectively. Lacoff filed three motions for extension of time to respond to the requests. See Doc. Nos. 82, 88 and 94. Lacoff's third motion requested a deadline extension until June 22, 2005 to respond to the requests for production. Some time after June 22, 2005, the Receivers were told that Mr. Lacoff needed more time to locate and produce the documents. In early September the

United States noticed Claimant's deposition and advised her counsel that the discovery documents needed to be provided in advance of that deposition. Claimant's counsel requested an extension of time until September 9, 2005 to "permit claimant's counsel additional time to sort through their client's responsive documents." See Plaintiff United States of America's Objection to Claimant Cheryl Lacoff's Motion for Protective Order [Doc. No. 114] at 2. Written responses to the United States' interrogatories were provided by Claimant on September 9, 2005. On September 22, 2005, nearly six months after the original document requests, and nearly three months after the deadline extension Lacoff requested, the Receivers and the Government received a small box containing 635 responsive documents. The two-page Affidavit of Duress was Bates stamp numbered L 0378 and L 0379, and was produced among a 45-page stack of documents held together with a small binder clip within the total production of 635 documents.

On November 17, 2005, Lacoff was deposed. At her deposition, the Affidavit of Duress was introduced as an exhibit by the Government, and Lacoff responded at length to the Government's questions regarding that document without objection. Neither she nor her counsel claimed any privilege regarding the document during the deposition or objected to its introduction as an exhibit.

2

On December 5, 2005, almost three weeks after Cheryl Lacoff's deposition, and four days before the scheduled deposition of Mr. Lacoff, counsel for Lacoff wrote to the Government asserting inadvertent production of a privileged document, and demanded the return of the Affidavit of Duress and all related notes. The parties discussed the dispute with the Court in early December via conference call, and briefed the issue.

Familiarity with the events surrounding the relationship between Martin Frankel and Claimant Lacoff is assumed, and this Court only sets forth those facts directly relevant to the claims in the instant motion.

In February of 1995, Lacoff entered into a lease agreement with Sundew International, one of the companies controlled by Martin Frankel, for the house at 881 Lake Avenue, Greenwich, Connecticut, adjacent to Frankel's property at 889 Lake Avenue. Disputes subsequently arose between Frankel, known to Lacoff at the time of the agreement as "Marty King," and Lacoff, and eventually the parties reached a settlement. A settlement agreement was signed by Lacoff on November 11, 1997, releasing all claims against "Marty King" related to the 881 Lake Avenue lease. The day after the settlement agreement was executed by Lacoff, she signed the document at issue here, a two-page document entitled "Affidavit of Duress," drafted by her husband Martin Lacoff. The Affidavit of Duress states, among other things, that Marty King had not lived up

to the terms of the lease, damaged the home, violated wetlands regulations, and allowed a duck to live in the house, but, because she feared for her and her family's safety, Lacoff signed the settlement agreement releasing King from her claims. In the Affidavit of Duress Lacoff swore before a notary public that the settlement agreement was signed under extreme duress.

I. Attorney-client Privilege

Standard of Review

The attorney-client privilege is the oldest privilege covering confidential communications in the common law. <u>Upjohn Co. v. United States</u>, 449 U.S. 387, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." <u>Id.</u> Furthermore, it is designed to encourage clients to "make full disclosure" to their counsel. <u>Id.</u> (quoting <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976)).

In <u>United States v. Int'l Bhd. of Teamsters</u>, 119 F.3d 210, 214 (2d Cir. 1997), the Second Circuit outlined the attorney-client privilege as follows: "'(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor,

(8) except the protection be waived.'" (quoting <u>In Re Grand Jury Subpoena Duces Tecum Dated September 15, 1983</u>, 731 F.2d 1032, 1036 (2d Cir. 1984)). <u>Accord</u> <u>United States v. Kovel</u>, 296 F.2d 918, 921 (2d Cir. 1961) (describing these elements as "Wigmore's famous formulation"). The elements have been stated more succinctly as follows: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." <u>United States v. Constr. Products Research, Inc.</u>, 73 F.3d 464, 472 (2d Cir. 1996), <u>cert. denied</u>, 519 U.S. 927 (1996) (citing <u>Fisher</u>, 425 U.S. at 403). The burden of establishing each element rests with the party claiming the privilege. <u>Int'l Bhd. of Teamsters</u>, 119 F.3d at 214. Since the privilege "stands in derogation of the public's right to every man's evidence, . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." <u>Id.</u> (citation and internal quotation marks omitted). "What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining legal advice *from the lawyer*." <u>United States v. Adlman</u>, 68 F.3d 1495, 1499 (2d Cir. 1995) (quoting <u>Kovel</u>, 296 F.2d at 922) (emphasis in original).

Discussion

Under either formulation, Claimant Cheryl Lacoff has not met her burden of establishing all of the elements. Lacoff states in her reply declaration that she, rather than her husband, claims the privilege. The Court notes however that in Claimant's memorandum of law in support of her motion, Lacoff puts forth the argument that <u>Martin Lacoff</u> drafted the Affidavit after consultation with counsel and that <u>he</u> recorded facts and conditions that <u>he considered</u> relevant to potential legal claims <u>he believed</u> the Lacoffs may have. Although Cheryl Lacoff is the one who signed the affidavit before the notary, and she has moved the Court for the protective order, it appears that her husband is claiming the privilege. See <u>Memorandum of Law in Support of Claimant Cheryl Lacoff's Motion for a Protective Order</u> [Doc. No. 108]. Mr. Lacoff is not a party.

As to the first element of the <u>Construction Products</u> formulation, Claimant Cheryl Lacoff must show that the Affidavit of Duress was a communication between her and counsel. In her memorandum in support she asserts that the Affidavit was made by Mr. Lacoff to communicate between Mr. Lacoff and counsel. In his declaration in support of the motion, Mr. Lacoff states that <u>he</u> prepared the Affidavit for his wife to record facts and conditions, including her state of mind, that <u>he</u> considered relevant. He states further that after his wife signed the Affidavit he provided

6

it to counsel. Only in her reply declaration does Claimant Cheryl Lacoff assert that she is claiming the privilege stating "[t]he reason we originally submitted a declaration from Mr. Lacoff in support of the Motion, rather than from me, is that he is far more familiar than I am regarding the circumstances surrounding the preparation of the Affidavit of Duress." See Reply Declaration of Cheryl Lacoff at 2 [Doc. No. 119]. However, Lacoff's reply declaration then states that her husband, acting on her behalf, consulted with counsel regarding the Affidavit. Neither Lacoff has stated to whom or for whom the Affidavit of Duress was prepared. Indeed, during the parties' conference call with this Court, the Court suggested that Lacoff's current counsel ascertain whether the document was in fact provided to counsel, and no evidence has been presented to the Court on this point. Therefore, Lacoff has failed to show that the Affidavit of Duress was a communication between Claimant and an attorney.

Secondly, Claimant must demonstrate she intended the Affidavit of Duress to be confidential and that it was in fact kept so. In her memorandum in support, Claimant states that Mr. Lacoff intended the Affidavit to be confidential and that he created the document with that intention. Only in her reply declaration does Claimant state that she too intended and expected the Affidavit to remain confidential unless she or her husband decided to disclose it to third parties. Neither Lacoff acknowledges the fact that the

7

document in fact was not kept confidential, as it was disclosed to the United States and Receivers during discovery, and was used by the Government without objection during the deposition of Claimant. See discussion below.

Thirdly, Claimant must show that the Affidavit of Duress was made for the purpose of obtaining or providing legal advice. Claimant has not done so. In her memorandum in support, Claimant argues that Mr. Lacoff created the document to record the facts and conditions that <u>he</u> considered relevant to potential legal claims. While the Affidavit may have been prepared with an eye toward soliciting legal advice, as Mr. Lacoff has claimed, his claims are illustrative of the fact that Mr. Lacoff, a non-party here, is claiming the privilege. No other evidence beyond his declaration has been put forth. As the Second Circuit stated in <u>Adlman</u>, "[w]hat is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining legal advice *from the lawyer*." <u>Adlman</u>, 68 F.3d at 1499 (citation omitted). Mrs. Lacoff herself merely states in her reply declaration that her husband is far more familiar with the circumstances surrounding the preparation of the Affidavit and that he consulted with an attorney on her behalf.

Even if this Court found the Affidavit of Duress to be protected by the attorney-client privilege, Claimant has effectively waived that privilege. As a general rule, the

voluntary production of a privileged document waives any claim of privilege with respect to that document. United States v. Gangi, 1 F. Supp.2d 256, 263 (S.D.N.Y. 1998). Where the party claiming privilege asserts that the production was inadvertent, courts take one of three approaches to assess whether production equals waiver - production, though inadvertent, always constitutes waiver; production of a privileged document never causes waiver of the privilege; and a "middle of the road" approach which employs a balancing test.[1] Courts in this Circuit follow the "middle of the road" approach, examining the following factors derived from the Court's discussion in Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985) : 1) whether reasonable precautions were taken by the disclosing party to prevent inadvertent disclosure; 2) the length of time taken by the disclosing party to attempt to correct the mistake; 3) the number of inadvertent disclosures among the overall volume of documents produced in discovery; and 4) overarching issues of fairness. See United States v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003). Accord Lava Trading, Inc. v. Hartford Fire Ins. Co., 03 CIV 7037, 2005 WL 66892 (S.D.N.Y Jan. 11, 2005); Aramony v. United Way of America, 969 F. Supp. 226, 235 (S.D.N.Y. 1997); Bank Brussels

---

[1] The strict approach is illustrated by the following: "When a document is disclosed, even inadvertently, it is no longer held in confidence despite the intentions of the party . . . . One cannot unring a bell." United States v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003) (citation and internal quotation marks omitted).

9

Lambert v. Credit Lyonnaise (Suisse) S.A., 160 F.R.D. 437, 443 (S.D.N.Y. 1995). As the Court stated in Lois Sportswear, "[w]hat is at issue here is whether or not the release of the documents was a knowing waiver or simply a mistake, immediately recognized and rectified." 104 F.R.D. at 105.

*Reasonableness of Precautions*

"The fact of disclosure does not necessarily mean that the precautions were unreasonable. . . . Generally, precautions will be reasonable if the procedure followed in maintaining the confidentiality of the document [is] not . . . so lax, careless, inadequate or indifferent to consequences as to constitute a waiver." In Re Natural Gas Commodity Litig., 229 F.R.D. 82, 86 (S.D.N.Y. 2005) (citing Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 96 CIV 7590, 1997 WL 736726 at *5 (S.D.N.Y. Nov. 26, 1997)). The producing party will waive the privilege if it or its counsel evinced such extreme carelessness "as to suggest that it was not concerned with the protection of the asserted privilege." Trudeau v. New York State Consumer Prot. Bd., 1:05 CV 1019, - F.R.D. -, 2006 WL 2390345 at *12 (N.D.N.Y. Jul. 21, 2006).

Claimant has not adequately explained why the allegedly privileged letter was not marked as such or why, after the document was introduced as an exhibit and referred to at length during Claimant's deposition, neither claimant nor her counsel objected to the use of the document or claimed any privilege. The only

10

information this Court has been provided regarding the procedural history here is from the Receiver-Claimants and the United States. They maintain that Claimant's counsel informed them that Claimant's husband was assembling the responsive documents. The United States also maintains that Claimant's counsel requested additional time at the beginning of September 2005 to "permit claimant's counsel . . . to sort through their client's responsive documents." Claimant's production was modest - a mere 635 pages. This Court has no information regarding the extent of review performed by Claimant's counsel or by Mr. Lacoff. Considering that Claimant took nearly six months to respond to the request for production, that she only produced 635 pages, and that numerous questions were posed to her without objection at her deposition regarding the Affidavit of Duress, Claimant's actions were lax and indifferent if not extremely careless, and certainly suggest that she was not concerned with the protection of the privilege. See In Re Natural Gas, 229 F.R.D. at 86; Trudeau 2006 WL 2390345 at *12. Thus, based upon the evidence before the Court, Claimant did not take reasonable precautions. "If a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels - if not crown jewels." Local 851 of the Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc., 36 F. Supp. 2d 127, 130 (E.D.N.Y. 1999) (internal quotation marks and citations omitted). See also Golden Valley Microwave Foods, Inc.

v. Weaver Popcorn Co., Inc., 132 F.R.D. 204, 209 (N.D. Ind. 1990) (finding insufficient precautions were taken where use of allegedly privileged letter went largely unchallenged in depositions of employees of party asserting privilege).

*Time Taken by Claimant's Counsel to Rectify the Error*

The second factor courts in this Circuit consider is the time taken to rectify the error. "Inordinate delay in claiming the privilege can prejudice the adversary and may be deemed a waiver." Bank Brussels, 160 F.R.D. at 445 (citation omitted). See also Rigas, 281 F. Supp. 2d at 741. The period after the producing party recognizes its disclosure error is the relevant period to weigh in considering timeliness. In Re Natural Gas, 229 F.R.D. at 87 (citation omitted).

Claimant asserts that upon discovering the error she immediately requested the return of the document. Claimant provides no insight as to when this discovery occurred. The document was produced in late September 2005 and was used extensively during Claimant's deposition on November 17, 2005. Claimant's counsel did not claim privilege on her behalf or request the return of the document until December 5, 2005, nearly three weeks after Claimant answered detailed questions regarding the creation of the document and the accuracy of its assertions. At no time during the deposition itself did Claimant or her counsel on her behalf assert that the document was privileged. Indeed, the

12

assertion of privilege was curiously made four days before the scheduled deposition of Claimant's husband Martin Lacoff. The inordinate delay here would prejudice the United States, which had already deposed Claimant regarding the contents and creation of the Affidavit, and which presumably was preparing to depose Claimant's husband on those same issues. See Trudeau, 2006 WL 2390345 at *16 ("the volume of documents does not provide sufficient cover for Defendants' error, and Defendants' reaction to the fortuitous disclosure evidently was not prompt enough, since the proverbial cat is out of the bag, and the damage has been done"). Claimant's assertion of privilege was not timely.

*The Scope of Production and the Number of Inadvertent Disclosures*

The third factor district courts in this Circuit weigh is the relationship between the overall number of documents produced and the number of inadvertent disclosures among those documents. "Where the overall scope of production [is] limited . . . failure to protect privileged documents is more likely to constitute waiver." Local 851 of the Int'l Bhd. of Teamsters, 36 F. Supp. 2d 127 at 133 (citation and internal quotation marks omitted). In Local 851 of the Int'l Bhd. of Teamsters, the inadvertent disclosure, a purportedly privileged letter, was one of seven exhibits to a motion served on plaintiff. The Court there found that the complete disclosure of the privileged information weighed in favor of a finding of waiver. Id. at 133-34. Similarly here,

13

not only did Claimant produce the Affidavit of Duress but she also responded to detailed questions about the creation of the document and its contents. Here, as noted above, Claimant filed three motions to extend her response date, and took almost another three months beyond the final response deadline to produce the responsive documents, totaling 635 pages. The Affidavit of Duress was in a 45 page stack of documents held together by a small binder clip. Claimant argues that the instant facts are similar to those in <u>United States v. United Techs. Corp.</u>, 979 F. Supp. 108 (D. Conn. 1997). However, in <u>United Techs.</u>, unlike here, the "privileged" document was only one out of thousands of pages produced and, unlike here, the document had not already been used in a deposition of the party later claiming privilege. In light of the extended time taken to produce one small box of documents, and her failure to assert privilege regarding the Affidavit at her deposition, the Court finds this factor weighs against Claimant. <u>See</u> <u>MSF Holding, Ltd., v. Fiduciary Trust Co. Int'l</u>, 03 CIV 1818, 2005 WL 3338510 (S.D.N.Y. Dec. 7, 2005) (finding waiver of privilege where two e-mails at issue were contained in a 202 page production of documents).

*Fairness*

In the instant case, issues of fairness weigh in favor of a finding of waiver. This final factor "focuses only on whether the act of restoring immunity to an inadvertently disclosed document

would be unfair, not whether the privilege itself deprives parties of pertinent information." Bank Brussels, 160 F.R.D. at 446. Fairness compels a finding of waiver where the privileged information has been widely disseminated. Rigas, 281 F. Supp. 2d at 741. The United States has already relied upon the disclosed document in preparing for and taking the deposition of Claimant. Claimant herself, with the assistance of counsel, testified as to the contents and creation of the document at her deposition. Fairness dictates that the Government be allowed to use its "windfall."[2] See e.g. Golden Valley Microwave Foods, 132 F.R.D. at 209 (finding, inter alia, that fairness dictated that plaintiff be allowed to use its windfall considering that it had used the document at issue in deposing its opponent's employees).

II. Work Product

Standard of Review

Federal Rule of Civil Procedure 26(b)(3) codifies the attorney work product doctrine, and protects from disclosure materials otherwise discoverable which were "prepared in anticipation of litigation" "by or for another party or by or for that other party's representative." FED. R. CIV. P. 26(b)(3). By thus protecting materials prepared in anticipation of litigation, the doctrine shelters from disclosure "the mental processes of the

---

[2] In describing the Affidavit of Duress as a "windfall" the Court is assuming only for purposes of this balancing test analysis that Claimant demonstrated that the document is protected by the attorney-client privilege.

15

attorney, providing a privileged area within which he can analyze and prepare his client's case." In Re Steinhardt Partners, L.P., 9 F.3d 230, 234 (2d Cir. 1993) (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)). To assert the privilege, a party must show that the documents at issue were "prepared principally or exclusively to assist in anticipated or ongoing litigation." Constr. Products, 73 F.3d at 473. However, while the doctrine "requires the existence of a real, rather than speculative, concern," there is no rule barring application of the doctrine to "documents created prior to the event giving rise to litigation." Adlman, 68 F.3d at 1501. Whether material is prepared in anticipation of litigation "turns on whether the preparing party had a unilateral belief that litigation was likely and whether that belief was reasonable." Sec. and Exch. Comm'n v. Beacon Hill Asset Mgmt., LLC, 231 F.R.D. 134, 139-40 (S.D.N.Y. 2004) (citations omitted).

Discussion

Claimant argues that, in addition to the attorney-client privilege, the Affidavit of Duress is protected by the attorney work product doctrine. While Claimant's argument is that the Affidavit was prepared by a party, see Memorandum of Law in Support of Claimant Cheryl Lacoff's Motion for a Protective Order at 8 [Doc. No. 108], in fact, Mr. Lacoff is not a party. However, as Rule 26 of the Federal Rules of Civil Procedure allows for the

16

protection to be extended to materials prepared "by or for another party or by or for that other party's representative," the Affidavit, if prepared in anticipation of litigation by Mr. Lacoff for Claimant, would be sheltered. FED. R. CIV. P. 26(b)(3). In her memorandum in support Claimant states that Mr. Lacoff prepared the Affidavit of Duress because <u>he</u> anticipated litigation concerning Sundew. Claimant puts forth no other evidence. The Affidavit was signed the day after Claimant executed a settlement agreement releasing Marty King/Martin Frankel from all claims related to the lease agreement for Claimant's home. Thus, it would not be reasonable for Claimant at that point to think that litigation was likely, and therefore the document could not have been reasonably prepared in anticipation of litigation. <u>Beacon Hill Asset Mgmt., LLC</u>, 231 F.R.D. at 139-40.

Even if the document fell under the protections of the work product doctrine, such protections were waived by Claimant. Once a party allows its adversary to share in an otherwise privileged document, the need for the privilege disappears. <u>In Re Steinhardt Partners</u>, 9 F.3d at 235. As this Court noted above, the balancing test to determine whether the disclosure was inadvertent weighs against Claimant. Even if this Court were to have found the disclosure inadvertent, that fact is irrelevant because "disclosure of attorney work product to an adversary in the litigation for which the attorney produced that information defeats the policy

17

underlying the privilege . . . . Granting the motion would do no more than seal the bag from which the cat has already escaped." (citations omitted). Local 851 of the Int'l Bhd. of Teamsters, 36 F. Supp. 2d at 134.  Thus, Claimant's Motion for Protective Order [Doc. No. 107] is DENIED.

        SO ORDERED.

           ELLEN BREE BURNS, SENIOR JUDGE
           UNITED STATES DISTRICT COURT

Dated at New Haven, CT, this 18th day of October, 2006.